Oscar Zinn and Eleanor Zinn v. Commissioner.
Zinn v. Commissioner
Docket No. 1123-70.
United States Tax Court
T.C. Memo 1972-224; 1972 Tax Ct. Memo LEXIS 37; 31 T.C.M. (CCH) 1116; T.C.M. (RIA) 72224; October 26, 1972
Allen S. Stim, 29 Broadway, New York, N. Y., for the petitioners. Michael A. Menillo, for the respondent. 1117 RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $20,538.99 in petitioners' income tax for the calendar year 1964. At issue is the correctness of the Commissioner's determination that a payment by petitioner Oscar Zinn in satisfaction of his obligations as guarantor of a corporate note gave rise to a capital rather than an ordinary loss of the petitioners. Findings of Fact The parties have filed a stipulation of facts which, together with an accompanying exhibit, is incorporated herein by this reference. Petitioners are husband and wife. They filed a joint Federal income tax return for 1964 with the district director of internal revenue at Manhattan, New York, and resided in Great Neck, New York, when their petition herein was filed. On October 25, 1961, petitioner Oscar Zinn ("Zinn") joined with one Louis Adler ("Adler") and one Gerald T. Hertz ("Hertz") to form the Adler Corporation *39 ("the corporation"). Adler and Hertz desired to have their shares of stock in the corporation issued in the names of their respective wives, and Zinn was advised to have his stock similarly listed in the name of his wife Eleanor. Pursuant to this advice Mrs. Zinn was issued shares amounting to 37.5 percent of the outstanding stock of the Adler Corporation. Her husband paid the corporation $63,750 for such shares, but he never held any Adler Corporation stock in his own name. The corporation entered the business of purchasing and selling real estate. On or about November 24, 1961, pursuant to the unanimous consent of its stockholders, it filed an election to be treated, for Federal income tax purposes, as an "electing small business corporation" under sections 1371, et seq. (subchapter S), I.R.C. 1954. The corporation was completely "liquidated" on April 30, 1963, at which time Eleanor Zinn surrendered the ownership of her 37.5 percent interest in the corporation. Pursuant to these events, Mrs. Zinn's basis in the corporation was reduced to zero. At the time of the trial herein, no notice of revocation or termination of the corporation's election under subchapter *40 S had yet been filed. After its "liquidation" the corporation remained indebted to at least one creditor, the Franklin National Bank, in respect of a loan the bank had made to the corporation. Such indebtedness was represented by a note issued by the corporation and guaranteed by Zinn, Adler and Hertz. After the corporation defaulted on the note, the bank called upon Zinn to make good on his guarantee. Zinn accordingly made a payment to the bank on September 3, 1964, in the amount of $43,200, which represented the then outstanding principal on the note. In return for such payment Zinn received the note and a release from his further obligations as guarantor, including a potential liability in respect of unpaid interest then amounting to $10,800, which the bank waived. Neither Adler nor Hertz made any payments pursuant to their obligations as guarantors, and Zinn's attempts to secure contribution from them were unsuccessful. On petitioners' joint return for 1964 an ordinary deduction in the amount of $42,393.14 was claimed as a "Subchapter S (Pseudo) Loss - Adler Corp." This deduction was claimed in respect of the payment Zinn made to the Franklin National Bank on September 3, 1964. [1] *41 The Commissioner determined that: [Such] loss constituted a non-business bad debt not created in connection with your trade or business, and therefore is subject to the limitations of section 1211. Inasmuch as you have already been allowed the maximum limitation of $1,000.00 under section 1211, further adjustment to taxable income is not required. Opinion RAUM, Judge: The only issue for decision is whether Zinn's payment of $43,200 to the Franklin National Bank in satisfaction of his obligations as guarantor of the Adler Corporation's indebtedness to the bank constituted a capital rather than an ordinary loss incurred by the petitioners. The Commissioner's position, in substance, is that the receivable Zinn thereby acquired by subrogation was worthless at the moment of its acquisition, that neither Zinn's original guarantee of the corporation's debt nor his payment in respect of such guarantee was made in connection with his trade or business, and that he therefore *42 incurred 1118 a nonbusiness bad debt deductible as a short-term capital loss pursuant to section 166, I.R.C. 1954. [2] In view of petitioners' failure to establish that Zinn's obligations in respect to the Adler Corporation's indebtedness were in any manner related to a trade or business of his own which existed separately and apart from that of the corporation, the Commissioner's determination must be sustained. See United States v. Generes, 405 U.S. 93, 103; Whipple v. Commissioner, 373 U.S. 193, 202-203; Putnam v. Commissioner, 352 U.S. 82, 85, 92-93; Burnet v. Clark, 287 U.S. 410, 415. *43 Petitioners have rather confusingly argued that the Adler Corporation, not Zinn, somehow incurred a loss when its obligations to the Franklin National Bank were satisfied by Zinn, and that petitioners were entitled to report such loss on their joint tax return pursuant to section 1374(a) in subchapter S of the Code. [3] Their position is wholly untenable. Nothing in the record even remotely suggests that the corporation had a "net operating loss" in 1964 or any other year which could be passed through to its stockholders under section 1374. Certainly Zinn's payment to the bank could not have given rise to such a loss. The corporation had already been liquidated (in 1963), and it sustained no loss in 1964. And even if it were to be treated as being alive in 1964, as contended by petitioners, its financial position in that year must be regarded as having improved rather than worsened. For, on its books, Zinn's payment would be reflected merely by the substitution of a liability to Zinn for a liability to the bank, and since the transaction resulted in the bank's forgiveness of $10,800 in accrued interest, it could hardly be treated as productive of a loss to the corporation in 1964. *44 Petitioners' claim to an ordinary loss by way of subchapter S is unsound for additional reasons. Even if the corporation had suffered a net operating loss in any year, petitioners would only have been entitled to claim 37.5 percent of such loss, which corresponded to the percentage of outstanding shares of the corporation owned by Eleanor Zinn. See section 1374(c)(1), I.R.C. 1954. Moreover, section 1374(c)(2) would have barred them from reporting any part of a net operating loss of the corporation on their tax return for 1964, because Mrs. Zinn's basis in the *45 corporation had by then been reduced to zero. See Herbert Levy, 46 T.C. 531, 537-538. And even if, as petitioners contend, Oscar Zinn acquired a basis in the corporation sufficient to absorb the claimed net operating loss by virtue of his $43,200 payment in satisfaction of the corporation's indebtedness (see Rev. Rul. 70-50, 1970-1 C.B. 178, as clarified by Rev. Rul. 71-288, 1971-2 C.B. 319), he was not a shareholder in the cororation but only a creditor and, as such, was not entitled under section 1374 to take into account any portion of its losses in computing his personal tax liability. Indeed, neither Oscar nor Eleanor Zinn was a shareholder of the Adler Corporation at any time during the year for which petitioners seek to avail themselves of the benefits of subchapter S, and it therefore does not matter which of the spouses may have been deemed the true "shareholder" in prior years. Petitioners' quixotic reliance on subchapter S is hopelessly misplaced. Decision will be entered for the respondent. 1119 Footnotes
1. There is an unexplained difference between the amount of the deduction claimed on petitioners' tax return ($42,393.14) and the amount of Zinn's payment to the bank as stipulated to by the parties ($43,200).↩
2. SEC. 166. BAD DEBTS. (a) General Rule. - (1) Wholly worthless debts. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year. * * * (d) Nonbusiness Debts. - (1) General rule. - In the case of a taxpayer other than a corporation - (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exhcange, during the taxable year, of a capital asset held for not more than 6 months. (2) Nonbusiness debt defined. - For purposes of paragraph (1), the term "nonbusiness debt" means as debt other than - (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.↩
3. SEC. 1374. CORPORATION NET OPERATING LOSS ALOWED TO SHAREHOLDERS. (a) General Rule. - A net operating loss of an electing small business corporation for any taxable year shall be allowed as a deduction from gross income of the shareholders of such corporation in the manner and to the extent set forth in this section.↩